The next case today is Case No. 23-1167, Zurich American Insurance Company v. Medical Properties Trust, Inc., Steward Health and Care System, LLC v. Case No. 23-1180, American Guarantee and Liability Insurance Company, et al. Counsel for the appellant, please go up to the podium and present yourself for the record. Good morning, Your Honors. May it please the Court, I'm Creighton Page on behalf of one of the appellants, Medical Properties Trust, which I'll refer to as MBT today. I'd like to ask if I can reserve two minutes of my time for rebuttal. Okay, you may. And let me ask, before you start, I believe you're asking in your brief that we should certify this to the Massachusetts Supreme Court, and I'm asking opposing counsel also to, at some point, address that issue. You'd like me to address that issue at some point? Or if you want to just very briefly start with that. I can very briefly address it now, Your Honor. Okay, but I know those are requests to certify, so start by addressing that, and then I'll hear from opposing counsel later. The request to certify, Your Honor, as you may have appreciated from its location in the briefs, is very much an alternative request. Our position is that when you have uncertainty about the proper interpretation of a policy term that is susceptible to more than one meaning, that well-established Massachusetts law tells us how to deal with that uncertainty. When it is susceptible to more than one meaning, and reasonably intelligent persons can disagree as to the proper meaning, then the term is ambiguous as applied in that context. And when it's ambiguous, it must be construed in the manner most favoring coverage. So that is the way that we think, Your Honors, ought to decide the question. But in the event that you're not inclined to do so, and the question, we appreciate, does boil down to what precisely did the SJC mean, when it defined surface waters as it did, then it strikes us that certification for the SJC to answer that question for itself would be the next best alternative. Okay, and aside from certification, and I guess you'll discuss it at some point, but we have the fidelity case from the First Circuit. Isn't that dispositive and doesn't require us to certify the case? You're asking, is the NOVA decision from the First Circuit final and dispositive of this case? Yes. So why don't we prove it? I call it fidelity, but it's NOVA. Fidelity v. NOVA, yes. We've always been referring to it as NOVA. So let's jump right to that. And that is certainly what you are going to hear from my brother on behalf of Zurich in a few minutes, that the case is that simple. There is binding precedent from this circuit, from the NOVA decision, on exactly the same question in this case. That's what he'll tell you. But there is only binding precedent that comes out of NOVA if two things are true. One, it must have actually decided the same issue of policy interpretation that we have in this case. And the NOVA court's treatment of that issue must have been essential to the outcome in that case. And neither of those things are true of the NOVA case. So maybe I'll start with the lack of it being essential to the case. And the party's briefs, I think, went through the history of the NOVA case in pretty extensive detail. Rightly so, in my opinion. I'm happy to go through as much of that with you as you wish. Assume we're familiar with the NOVA opinion and go to your argument. I think what the briefs did is they distilled the question of whether that surface water coverage portion of the opinion is obitur dicta or not. Can I ask you a question about that? Sure. I know it was an alternative holding, and I know that questions came up unexpectedly for the parties because of the district court's ruling. They hadn't been arguing about it at the district court level. But I don't see how it can be dicta, or I'm curious to your response of how it can be dicta, because ultimately what the decision in NOVA was looking at was whether the coverage was going to require a deductible or not a deductible. And the difference between the majority and the dissent was no deductible versus deductible. And the majority had to address the dissent's view that there was a deductible to conclude there wasn't a deductible. So why wasn't therefore the resolution of surface water critical to the majority's ultimate decision? I know that was a long question. No, it's okay. It's a good one. And so there were three alternatives in that case. It wasn't just whether there was coverage with a deductible or without a deductible. There was also the argument that there be no coverage at all. Correct. But both the dissent and the majority rejected that. That is correct, yes. So I'd like to key in on a phrase that you used in posing that question and calling it an alternative holding. And I'm not sure I agree with that. And the reason is, yes, it was the second of the two issues presented concerned this alternative argument for surface water coverage under the flood endorsement. But the court's decision on that question, finding that there would have been in any event, these are the words it used, coverage under the flood endorsement but with a $25,000 deductible, it is not an alternative. When we think of an alternative holding, we think of two holdings, each of which can serve as the basis for the judgment. Right? That's what the Supreme Court cases that Sir excited talked about. And that is not the case in Nova for precisely the reason that Your Honor identified. The holding in favor of fidelity on each of those issues would not result in the same outcome in the case. Only one of them did. And finding coverage under the flood endorsement would have resulted in a different judgment than the judgment that actually entered for fidelity. So this goes to the sufficiency piece in the Supreme Court analysis, right? It asks whether the decision on the second question was necessary and sufficient for the judgment that entered. It wasn't sufficient. We know that because fidelity could not have had full coverage without any deductible if its coverage had depended on the flood endorsement. And it wasn't necessary either because how would the judgment for fidelity have changed if the court had found no coverage under the flood endorsement? It wouldn't have changed anything. Fidelity already had full coverage for its losses with no deductible under the other policy provisions giving it coverage for drain overflow. And on a more practical level, the issue of what the definition of surface water, which is the precise issue in this case, was it really fully evaluated in NOVA because there was no dispute about the definition of surface water in that case, correct? On the central issue, was there any dispute between the parties? The quick answer is no. And NOVA, the insurer in that case, made this abundantly clear in its appellate briefs when it said the definition of surface water in Massachusetts is irrelevant to this appeal. And it is clear that this court, in deciding the case, regarded it as a non-issue. When it turns to the surface water question, the second issue in that case, it said, we now turn to the district court's characterization of the water as surface water. NOVA does not contest that finding on appeal. And so I thank you, Your Honor, for the question because it reminds me of the second piece of why I said NOVA creates no binding precedent here. One is that it wasn't essential to the outcome. We just talked about that. The other is that in order for it to create binding precedent for this case, it would have to be on the same question. And the actual issue presented in NOVA, well, let me start with the issue here. The issue here is whether the SJC's definition of surface water as waters that lie or flow on the surface of the earth and naturally spread over the ground but do not form a part of a watercourse or a lake, whether that accurately describes the rainwater that landed on the hospital's roofs without ever lying or flowing on the surface of the earth and without ever naturally spreading over any ground on its way to the hospital. You can appreciate that our position is that the answer to that is no, but that is not at all the question that was presented in NOVA. NOVA did not ask whether the water on Fidelity's roof fits within the contours of the SJC's definition of surface waters. The actual issue presented, and I don't have it in front of me so I'm not going to get it exactly right, but it was something like where the district court has determined that the water that entered the building is surface water and where the flood endorsement provides coverage for damage caused by surface water. Did the district court err by ignoring that flood endorsement and nevertheless finding no coverage? Completely different issue, right? The question was whether surface water damage was covered. Correct. Not whether it was surface water. Absolutely right. There's one other reason that I want to point out why it was very different, and you will have seen this from the briefs. The context in which finding the water on Fidelity's roof to be surface water and what the consequence of that would have been in that case is exactly the opposite of what the consequence of finding the water on the hospital's roof to be surface water would be in this case. In Fidelity, it would have been a backup argument to find another way for Fidelity to have coverage. It would have been coverage granted, right? So if there was more than one reasonable interpretation of the word surface waters in that case as applied to the water on Fidelity's roof, then under those same well-established Massachusetts rules of policy interpretation, the court would have been bound to find it to be surface water because it would have been the interpretation that most favors coverage. The opposite is true here. Here, a finding that the water on the hospital's roof was surface water would eliminate tens of millions of dollars of the coverage that MPT and Steward are expecting from the storm. And so if you find that there is more than one reasonable interpretation, and of course it has been our position that there's not, that the only interpretation of SJC's words is that they meant what they said when they said on the surface of the earth and the ground. But even if you thought there was more than one conclusion and that reasonable people could disagree that maybe it does include water on the roof that never touches the ground, even then you would just have two reasonable interpretations. And if reasonably intelligent people can disagree, then in this case you have to rule that you have to apply it in the way that most favors coverage. Can you just say what your best argument is why the use of surface water here in this policy is ambiguous? Because we have to find that it's ambiguous to interpret it in a way that benefits the insured, right? So why do you think it's ambiguous? What's your best argument? Well, let me just push back on that because you don't have to find that it's ambiguous in order to rule in MPT's favor. You can find that the term surface waters as used in the policy and which is not defined by Zurich has the meaning that the SJC has given it. And I think the parties agree on that. The term surface waters, not having been given any other meaning, has the meaning the SJC gave it. And it is well within your ken to look at the definition that the SJC gave and say that does not describe, unambiguously, that does not describe the water that landed on the roof without ever exhibiting either of the characteristics that the SJC said surface waters have to have. So you don't have to find it ambiguous. What I'm suggesting is that it is at least a reasonable interpretation, at least a reasonable interpretation, to look at the words that the SJC chose to define surface waters and to construe those words literally, to think that they meant what they said. So you're saying we don't have to find the term ambiguous, just the SJC's definition of the term is ambiguous or susceptible to different interpretations? The term in the policy is the SJC's definition of that term, right? It's really nothing more than importing the SJC's definition of that term into the policy. So we are talking about the words that the SJC used to define it. And so, yes, if it is at least reasonable to take the words the SJC used and think that they meant them literally, then you have more than one reasonable interpretation, and that's ambiguity, and that requires a ruling in our favor. There are a couple of other reasons that I might point out why you might find MBT's position to be reasonable, at least reasonable, right, which is what we're talking about, I think the question you posed. The first is that it is the exact same position that Zurich took in this case for the first few months of its adjustment. Zurich also said that the damage on the ground floor in the basement was flood, but the damage on the upper floors that was caused by overflow of the drains in the roof is not flood. If you could also look at the decisions of the other courts outside of Massachusetts that have dealt with precisely this question, and may I finish? Yes. And which have adopted MBT's view and rejected Zurich's view. So I'd ask you to consider how could MBT's position here be unreasonable if it is the one that takes the SJC's definition literally and in its ordinary terms, if it adopts the same position Zurich actually took, and if it adopts the majority view of courts that have addressed this question. It's hard in my view to consider that an unreasonable interpretation of the policy. Thank you, Your Honor. Okay, thank you. Let's hear it now. Attorney Cooper, please introduce yourself for the record. May it please the Court, Howard Cooper for Stewart Healthcare Systems, and in my one minute I want to pick up where my colleague just left off. This Court has long recognized the proposition that Mr. Page started with that where there are dueling reasonable interpretations of a policy provision, the interpretation which favors the insured is the winning interpretation. That's especially true when it comes to exclusionary provisions in insurance policies. Your Honors, if you look at nothing else in the record, please look at the appendix at 1181, which is a letter that was sent to my client by Zurich, in this case it's related entity AGLIC, weeks after the disaster at Norwood Hospital. In the third paragraph of that letter, Zurich states as follows using defined terms in the policy by virtue of initial capital letters. It appears that the property damage sustained on both the basement and ground level, as well as any time element losses resulted from flood, capital F. May I finish? Yes, please. Any water damage sustained on the first, second, and third floors appears to have resulted from water intrusion caused by wind-driven rain in an overflow of roof drains and parapet flashings. AGLIC plans to separate the flood damage sustained on the basement and ground floors, including all the time element losses, from the water intrusion property damage sustained on the first, second, and third floors. If I may, Your Honors, I simply say while there may be parts of that sentence that are irrelevant, or those sentences, that is the distinction that lies at the basis of the insured's reasonable interpretation. And frankly, it's where we started this whole dispute was with AGLIC's position. So AGLIC itself, I would respectfully submit, has acknowledged the reasonableness of the interpretation advanced by the insured's. Thank you. Thank you. Let's hear from Mr. Hoffer now. Thank you, Judge Helpe. May it please the Court, Patrick Hoffer for Appalachian-Zurich and American Guarantee. Judge Helpe, if I may, I will start with the question that you asked at the beginning of the argument about certification. The Court's policy and rule with respect to certification really looks to ask a State Supreme Court to answer an issue of law, an unanswered issue of State law. The Court, in the first instance, doesn't believe it is qualified to answer. If, for example, the issue were whether Massachusetts allows punitive damages for reckless conduct, not just intentional conduct, that would be an issue of law that would be undecided in Massachusetts, and therefore this Court would be quite justified in certifying the issue to the Supreme Judicial Court  But here we're not dealing with an uncertain question of Massachusetts law. Instead, we are applying settled principles of contract law under Massachusetts law, and we're applying it to a set of facts. And that is what courts do all the time, particularly Federal courts, when asked to resolve a case product in the diversity jurisdiction and apply ERI. So if the Court were to certify this issue to the Massachusetts Supreme Judicial Court, it would be essentially asking that Court to apply settled law to a particular set of facts, which courts do all the time, trial courts and courts of appeal. And they do it for good reason. Rather than certify, courts, Federal courts, this Court, decides cases in front of it because the extraordinary additional burden it would place on the parties in the courts to have that time taken up with taking an issue to the SJC. Let me ask you, if our inclination were to rule against your client, would your answer still be the same, or would you say, then certify? So that's kind of what opposing counsel said. Well, of course you are. I guess you'd like two shots at the answer. I do think, though, that the issue is clearly resolved. And first of all, it's clearly resolved by the prior panel decision in Fidelity v. Nova. That stands as circuit precedent. And it is circuit precedent because Fidelity, Nova, involved the same facts, a heavy rainstorm had deposited a huge amount of water on a flat roof with parapet walls, involved nearly identical policy language in that the definition, we had the definition of flood and the term surface waters involved the same issue, which is whether that large amount of water ponding on the roof was within the term flood under the policy, and, of course, it involved Massachusetts law. Counsel, can I just ask you, I'm struggling, though, obviously we want to be very careful about applying our own precedent, but I'm struggling with how that was a holding in the case when the definition of surface water was not contested. So the insurer in that case agreed that the water in question was surface water. The only thing that was contested was whether it was going to be covered. The parties hadn't briefed the issue below. Surface water came up in the district court's decision for the first time. So, you know, is it really a decision where the court had full briefing on the question like we have here  The issue was squarely and necessarily decided by the court in order to reach its decision, and, therefore, its resolution was not dicta. That is, you raised the issue earlier, Judge Rickman, about the difference between the deductible and no deductible. I would point out, though, there's an additional reason why Judge Tortorella had to specifically address the surface water issue in that case. It's because that was necessary to reverse the district court's holding that surface water was excluded. But not the definition. It was necessary to address whether the policy excluded coverage for surface water, not whether it was surface water, correct? That is correct. However, the court's opinion was extremely thorough and careful in going through the facts of the case and Massachusetts law on the issue. And, therefore, I don't think it's fair to treat the court's opinion on that as being ill-considered. At a minimum, even if it is strictly dictum, it is carefully and considered analysis of this court on the issue and, therefore, is deserving of great respect, if not treatment as precedent. So we look at the analysis of the court in NOVA, and the analysis, it starts with the then-recently decided cases of the Supreme Judicial Court in Boa Zova and Sarabia. And even if the court were now willing to sort of redo, you know, go back and redo the eerie prediction that Judge Tortorella did in NOVA, the result is the same, because the law has not changed. Those cases stand as the statements of Massachusetts law on this issue. And we look at Boa Zova and what it relied on. Let me ask you, after the NOVA decision, are there any more recent SJC, Massachusetts SJC, cases on this matter or no? No, Your Honor, not that we know of. What about any Massachusetts appeals court cases? Not that we know of, Your Honor. Okay. Or Superior Court cases? That you don't know of. No, sir, no. And the question is relevant, because under Commissioner of IRS versus State of Bosch, of course, if there has been some development, even in the lower state courts, that would suggest that the Supreme Judicial Court would reach a different decision. This Court is entitled to look at those intermediate lower decisions, but it doesn't have to. When it looks, when it's deciding the eerie question, it has to decide what would the SJC do. And we have the best indicator of the answer to that question from the SJC itself. So in Boa Zova, the Court, among other things, cited a case called Cameron from the D.C. Court of Appeals. And that case also cited a case from Delaware Chancery Court called Bringhurst. We cite these in our brief. And the reason I raise these is because these are cases which directly deal with water on a roof. And what the SJC said in Boa Zova was that surface waters is waters from falling rain or melting snow. And then it talked about the surface of the ground in order to distinguish that kind of surface water from water that is a body of water, like a lake or a water course, like a stream or a river. That kind of surface water is distinct, and that's what all these cases say. And they say surface waters, water from falling rain, melting snow, doesn't have any direction. It's naturally occurring, but it doesn't have a channel. It's not contained in like a lake. That's what surface water is. Counsel, can I ask you, if it's that clear, why did Zurich initially take the opposite position? It did not take a position, Your Honor. So the initial response was made prior to the claim being presented by the insureds. There was notice, and there was response, and the Zurich reserved the right to, as it continued its investigation, to reach a different determination. So when it did get the full information about what happened at the hospital is when it actually made the claim determination. There's no issue that Zurich has stopped or has waived from asserting this position now. But I think the context of the description of what happened has to be taken into account because at that point Zurich did not have full information about what happened. It knew that there was rainwater on the roof, right? Didn't it have the basic fact that's critical? Well, the adjuster at the time had certain facts, did not know. I can't testify to what the person had in his head at the time. But the analysis of whether surface waters under Massachusetts law included waters that inundate a roof, and it's not just this parapet roof, it's also the courtyard. The courtyard is a roof. It's a few feet off the ground. People walk on it all the time, at least until the hospital had to be rebuilt. It's used as a place for lunch. It's on the ground for all practical purposes. So what is the difference between the water on this courtyard roof and water on the roof that's five stories high? Well, the difference is height. And how is there any basis in the policy language for a height test? And the answer is none. And in fact, the cases cited in Boasova do not make this distinction. So when you're talking about there's no difference as to height, you could in theory have a 40-story building and it wouldn't make a difference for a 100-story building. It would not, Your Honor, because again, the cases cited by the SJC say a roof is an artificial elevation of the earth's surface. And the SJC said an artificial surface is a surface. And therefore, water on that surface is within this definition. Let me also ask you, going back to my question about the SJC appeals court, superior court, in Massachusetts, and again, I don't know what authority, but has the insurance commissioner, or I don't know if that's the title of the position, made any statements or any, you know, administrative rulings pertaining to this issue that you know of? No, not that I know of, Your Honor. Typically, insurance commissioners do not get involved in questions of interpretation of insurance policy. But sometimes I know other agencies. There's guidance from the agency. So in this case, we don't have guidance from the insurance commissioner. No, Your Honor. No, we do not. Now, I would like to briefly discuss the question of whether Bozova itself is subject to re-litigation in this court. What matters is that the Supreme Judicial Court and this court analyze the facts and reach the same conclusion. Indeed, water on an artificial surface is surface water. If the court were to accept MPT's invitation to re-examine the arguments and indeed the record in other cases that have already been decided, then the concept of precedent would have no meaning and the court's work would be exponentially expanded in every case. Counsel, can I just ask you about that? Because I'm just not sure that's what the SJC determined definitively, is that water on an artificial surface is still always surface water, because it just seems that you're excluding. So I'm looking at page 392 of the opinion, and I believe your opposing counsel quoted this. This is where the SJC says, we've described surface water as waters from rain, melting snow, springs, seepage, or floods that lie or flow on the surface of the earth. Correct. So that seems integral to its description of surface water, and it seems like you're omitting that essential clause. So what I would like to highlight, and what Your Honor just pointed out, there's an or. It says, we have described it as, quote, waters from rain, melting snow, springs, or seepage, or floods that lie or flow on the surface of the earth. Are you saying that the phrase that lie or flow on the surface of the earth only modifies the word floods? What I'm pointing out is all the cases that the SJC cites in this discussion, which goes on until the next page, address what I just discussed. That is, the case going back over 100 years, surface waters means waters from falling rain or melting snow, and when it gets on the ground, it is surface water if it's not in a body of water or a channel like a stream. In other words, the case is... I'm sorry to interrupt you, counsel, but that's the next part of the description on page 392. So it says, it's springs, seepage, or floods that lie or flow on the surface of the water and naturally spread over the ground but do not form part of a natural water course. They're two separate things. Right? Or did I misread the quote? No, no, Your Honor, you didn't misread it. What I'm pointing out is that over time, courts have dealt with the question, what is surface water? Because this is almost a term of art that courts and other contractual parties have used in order to describe what they mean. And the descriptions over time include falling rain, melting snow. And they are attempting to distinguish that surface water from water that is more typically described as water in a channel, like stream or river, or water in a body. And there's a reason to distinguish those because the law makes distinctions. For example, in the concept of easements or the concept of nuisance. If you allow surface water to flow unnaturally from your property onto... This was the Sanctus case involving Lynn Water Authority where the water is allowed by the property owner to flow unnaturally to a neighboring property owner. That creates issues in the law of property. But if it's naturally flowing in a channel, that is not the problem of the original property owner. So this is why the law makes these distinctions. And contractual parties use this concept in order to arrange their contract. So you're saying that's really what is the critical issue that's being addressed in that description, just bodies of water versus... Yes. Not bodies of water. The substantial number of cases that the SJC cites all go to this concept. But the next part of the answer is that the SJC does conclude that water on a patio is surface water even though it's an artificial surface. And that is the basic understanding that motivated the decision in NOVA as well. So thank you, Your Honor. Thank you. Rebuttal. Thank you, Your Honor. It's Creighton Page for NPT again. There are a few points that I want to try to address here in my remaining time. I'll see how many I can get to. The first is you heard a suggestion that the SJC's citation to other cases that purportedly involved water on a roof like what we have here might signal something about what the SJC would have held in a case like this. The cases the SJC cited are Cameron and Crocker. Unless I'm mistaken, and I'm pretty sure that I am not, the SJC did not cite Brighurst. Brighurst did involve water on a roof. Not an insurance case. Very, very different case, and you will have seen in the briefing the reasons why we think it is not at all persuasive. But the two cases that the SJC did cite, Cameron and Crocker, did not involve water on a roof. They both involved water flowing over a ground-level surface into the ground level of the insurance property, just like what happened in Boazova, where the rainwater flowed over a ground-level patio into the ground level of the home, and just like what happened in Surabian, the other SJC case, water flowing over a ground-level parking lot. These cases are nothing like our case, and the citation to Cameron and Crocker doesn't suggest anything about how the SJC would cite this. If anything, Crocker... You will have seen that one of the cases we cited, a Union Street case from Pennsylvania, addressed an argument like this, where somebody was saying, well, if the water in Cameron on this patio that was sitting on top of the ground by an inch, if that's not surface water, or if that's surface water, then the water on the roof must be, too. And the court kind of had no use for that argument. So, of course, there's a difference between the roof up above the house and water on the ground down below it. And this is another one of the points I wanted to address. The suggestion that a building roof is just an artificial extension of the surface of the earth. Number one, if the SJC had meant to include that when it defined surface waters,  waters that lie or flow on the surface of the earth or buildings thereon. The New Jersey court, one of the cases that the Zerk has cited, it defines surface waters precisely that way. But the SJC did not. I would respectfully suggest if you go to the top of this building, which appears to have a flat roof, and look down over the edge, you will see the surface of the earth and the ground a substantial distance below you. You are not on the surface of the earth or the ground. Thank you. Okay, thank you, counsel. That concludes arguments in this case?